

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103062 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Montgomery County |
| vs. | ) | 12AA-CR00306-02 |
| | ) | |
| MALLORIE M. BARNETT, | ) | Honorable Wesley C. Dalton |
| | ) | |
| Defendant/Appellant. | ) | FILED: September 13, 2016 |

## OPINION

Mallorie M. Barnett (Defendant) appeals from the judgment upon her conviction following a jury trial for one count of Sexual Contact with a Prisoner or Offender by Probation/Parole Officer/Employee of Jail, Prison, or Correctional Facility, in violation of Section 566.145, RSMo 2000,[1] for which she was sentenced to thirty days in the county jail. We affirm.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: In August 2011, Defendant was hired by the Division of Youth Services to work as a special education teacher at the Montgomery City Youth Center (the Center). The Center is

---

[1] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

run by the Department of Social Services and is a secure residential facility for youth who have been convicted of crimes while under 17 and sentenced as adults.[2]

Shortly after Defendant began working at the Center, Loren Hume (Hume), the facility manager, received allegations that Defendant had brought contraband items, including a cell phone and chewing tobacco, into the Center for a 19-year-old man (Juvenile Prisoner) who was one of the Center's residents. Hume testified that for a while he tracked both Defendant and Juvenile Prisoner and eventually confronted Juvenile Prisoner about whether he had a cell phone. Juvenile Prisoner denied he possessed a cell phone.

From November 30 to December 2, the Center put on an annual play, in which both Center residents and employees participated. Certain portions of the play set, where Juvenile Prisoner and Defendant were during the play, were hidden from the security cameras. After the play, Hume still suspected that Juvenile Prisoner had a cell phone that was provided by Defendant, so he monitored Juvenile Prisoner on security cameras. Hume informed Defendant that there was going to be a search of Juvenile Prisoner. Hume testified that shortly after his conversation with Defendant he observed on security video what he believed to be Defendant contacting Juvenile Prisoner to warn him about the impending search. Following a strip search of Juvenile Prisoner, Hume found the cell phone. A few days later, Juvenile Prisoner disclosed to Hume that Defendant had indeed provided him with the cell phone and that Defendant had given Juvenile Prisoner oral sex during the play.

---

[2] Section 211.073 gives a court the statutory authority to invoke "dual jurisdiction of both the criminal and juvenile codes" in cases involving an offender under 17 who is transferred to a court of general jurisdiction and whose prosecution results in a conviction. Section 211.073.1. Under this statute, the trial court may "impose a juvenile disposition . . . and simultaneously impose an adult criminal sentence, the execution of which shall be suspended pursuant to the provisions of this section." Id.

Thereafter, the Department of Social Services began an investigation into the allegations made by Juvenile Prisoner. Brian Lane (Lane), a Department of Social Services investigator, testified that he interviewed both Juvenile Prisoner and Defendant. Lane testified that Juvenile Prisoner told him Defendant provided him with the cell phone, chewing tobacco, and that she gave him oral sex. While Defendant initially denied providing anything to Juvenile Prisoner in the Center, she eventually admitted that she had provided both items and had given Juvenile Prisoner oral sex in the backstage area during the play when the security cameras were blocked by the play set.

The State then charged Defendant by amended information with one count of the class D felony of sexual contact with an inmate, pursuant to Section 566.145, for events that occurred on or between November 30 and December 2, 2011.

On April 22, 2015, following a jury trial, Defendant was found guilty as charged. The jury recommended a punishment of 30 days in jail with no fine. The trial court sentenced Defendant in accordance with the jury's recommendation. This appeal follows. Additional facts will be set forth in the opinion as necessary to address Defendant's points on appeal.

<u>Motion to Dismiss for Failure to State Offense</u>

In her first point, Defendant argues the trial court erred in denying her Motion to Dismiss for Failure to State Offense.[3] Defendant contends that she was neither an employee of, or

---

[3] Defendant filed a pre-trial Motion to Dismiss for Failure to State Offense, arguing that the evidence was insufficient to sustain her conviction for sexual contact with an inmate. Following a hearing on the matter, the motion was denied. Defendant also filed a motion for judgment of acquittal at the end of State's evidence, for judgment of acquittal at the close of all the evidence, and a motion for new trial in which she preserved both points on appeal. While Defendant's Point I only addresses the Motion to Dismiss for Failure to State Offense, we gratuitously consider Defendant's motion to dismiss as a claim denying her motion for judgment of acquittal.

3

assigned to work in any jail, prison or correctional facility, nor was the alleged Juvenile Prisoner

an offender or prisoner as contemplated by Section 566.145. We disagree.

The statute under which Defendant was convicted provides as follows:

1. A person commits the crime of sexual contact with a prisoner or offender if:
    (1) Such person is an employee of, or assigned to work in, any jail, prison or correctional facility and such person has sexual intercourse or deviate sexual intercourse with a prisoner or an offender who is confined in a jail, prison, or correctional facility; or
    (2) Such person is a probation and parole officer and has sexual intercourse or deviate sexual intercourse with an offender who is under the direct supervision of the officer.
    2. For the purposes of this section the following terms shall mean:
    (1) "Offender," includes any person in the custody of a prison or correctional facility and any person who is under the supervision of the state board of probation and parole;
    (2) "Prisoner," includes any person who is in the custody of a jail, whether pretrial or after disposition of a charge.
    3. Sexual contact with a prisoner or offender is a class D felony.
    4. Consent of a prisoner or offender is not an affirmative defense.

Section 566.145. When we review a challenge to the sufficiency of the evidence, we accept "as

true all of the evidence favorable to the state, including all reasonable inferences drawn from the

evidence." State v. Grim, 854 S.W.2d 403, 405 (Mo. banc 1993). We reject "all contrary

evidence and inferences." State v. Botts, 151 S.W.3d 372, 375 (Mo. App. W.D. 2004). We are

limited to determining "whether there is sufficient evidence from which a reasonable juror might

have found the defendant guilty beyond a reasonable doubt." Grim, 854 S.W.2d at 405. We do

not "act as a 'super juror' with veto powers, but give[ ] great deference to the trier of fact." State

v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011). Nor do we "weigh the evidence anew since the

fact-finder may believe all, some, or none of the testimony of a witness when considered with the

facts, circumstances and other testimony in the case." Id. Statutory interpretation raises a

question of law that we review de novo. Id. at 507.

4

Before trial, Defendant filed her Motion to Dismiss for Failure to State Offense in which she argued that Juvenile Prisoner was not a prisoner or offender and that the Center was not a "correctional facility, jail, or prison" under Section 566.145. The trial court held a hearing on the matter in which Ricky Dixon (Dixon), a former assistant manager of the Center, testified with regard to the purpose of the Center and the meaning of "dual jurisdiction."

On direct examination, Dixon testified that the purpose of the Center was to house dual-jurisdiction youth. He explained that dual jurisdiction was a sentencing option for the courts in which they can simultaneously impose a juvenile sentence and an adult sentence, resulting in a suspended execution of adult sentence while they are in custody of Division of Youth Services. Dixon testified that, by statute, to be eligible for the dual-jurisdiction program, the youth has to be under the age of 17 at the time of sentencing, and the trial court can ask the Division of Youth Services to do an assessment to determine if the youth is amenable to treatment through the program.

Once sentenced into the program and at some point before his 21st birthday, the youth will again appear before the trial court and, at that time, the court will determine whether it will release the youth on probation or impose the adult sentence and send the youth to the Department of Corrections. If the trial court sends the youth to the Department of Corrections, the court may, if it so chooses, give the youth credit on the adult sentence for the time spent at the Center.

Here, Juvenile Prisoner became eligible for the dual-jurisdiction program and became a resident of the Center following a conviction for robbery that occurred when he was 16 years old and after he had been certified as an adult by the juvenile court. During the

5

time of the incident with Defendant, Juvenile Prisoner was 19 and was housed at the Center. At the time of trial, Juvenile Prisoner was 20 years old.

With regard to the daily operation of the Center, Dixon testified that the residents of the Center are considered to be in the custody of the Division of Youth Services, are not permitted to come and go as they please, are not allowed to move about within the facility as they please, and they are always confined to certain areas of the facility at particular times. Dixon testified that the outer perimeters of the facility are locked. Dixon also testified that whenever any resident needs to leave the facility for any reason, he is fully shackled and escorted by security officers. Following Dixon's testimony, the trial court denied the motion to dismiss and the case proceeded to trial.

Under Section 566.145, the term "'[o]ffender', includes any person in the custody of a prison or correctional facility and any person who is under the supervision of the state board of probation or parole" and the term "'[p]risoner', includes any person who is in the custody of a jail, whether pretrial or after disposition of a charge." Section 566.145.2(1) and (2). The legislature did not define the words "jail," "prison," or "correctional facility" for purposes of Section 566.145. In "the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." State v. Oliver, 293 S.W.3d 437, 446 (Mo. banc 2009). Moreover, the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue. Ivie v. Smith, 439 S.W.3d 189, 202 (Mo. banc 2014).

"Jail" means "a place where people are kept when they have been arrested and are being punished for a crime." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523 (3d ed. 1993). "Prison" means "a building where people are kept as punishment for a crime or

6

while they are waiting to go to court." Id. Finally, "correctional facility" means "a place where people are kept when they have been arrested and are being punished for a crime: prison."

Under MAI-CR 333.00, "corrections employee," as used in Chapter 565, means

> ….a person who is an employee, or contracted employee of a subcontractor, of a department or agency responsible for operating a jail, prison, correctional facility, or sexual offender treatment center or a person who is assigned to work in a jail, prison, correctional facility or sexual offender treatment center.

Here, based on the definitions contained in the statute, the MAIs, and the plain meanings of the words not defined, Defendant, a corrections employee, was guilty of sexual contact with a prisoner or offender. First, the Center is a "jail, prison or correctional facility." Residents of the Center, like Juvenile Prisoner, are confined there only after being convicted of an offense in court and accepted into the youth program. Although not run by the Department of Corrections, the Center is a rehabilitation facility for youths who have been convicted as both juveniles and adults, and it was specifically created for that purpose. Therefore, the Center fits squarely under the plain meaning of "jail, prison or correctional facility." Further, Juvenile Prisoner was an "offender" under the statutory definition of that word, because he was certified as an adult and convicted of robbery when he was 16 and was in the custody of the Center at the time of the incident with Defendant. Therefore, Juvenile Prisoner was a person in the custody of a "prison" or "correctional facility."[4]

Finally, it is obvious that the intent of the legislature in creating the crime of sexual contact with a prisoner or offender was to prohibit sexual contact between inmates and the

---

[4] Defendant argues that the definition of "correctional center" in Section 217.010.4 should control here. However, as the State correctly points out, the legislature specifically stated that the definition of "correctional center" in Section 217.010 should be used in that Chapter and in Chapter 558, with no mention of Chapter 566, under which Defendant was convicted. If the legislature intended "correctional facility" and "correctional center" to mean the same thing, it would have said so.

7

employees in positions of power over them, regardless of whether or not the sexual activity was consensual. See generally State v. Hall, 321 S.W.3d 453, 456 (Mo. App. S.D. 2010). An educator employed at a rehabilitation center for youth inmates, such as the Center, would fall within the group of people the law intended to prohibit from having sexual contact with the youths under their control.

Based on the foregoing, the trial court did not clearly err in denying Defendant's motion to dismiss. The State sufficiently proved Defendant committed the offense of having sexual contact with a prisoner or offender in that Juvenile Prisoner was an "offender" and Defendant was an "employee" of a facility squarely within the meaning of Section 566.145. Point I is denied.

Motion to Suppress Evidence

In her second point, Defendant argues the trial court erred in denying her motion to suppress her confession. Defendant contends that her statements to the Department of Social Services investigator were not voluntarily given, were the result of governmental or police coercion and improper inducement, and violated her Miranda[5] rights. We disagree.

When reviewing a trial court's ruling on a motion to suppress, we are limited to determining whether the evidence is sufficient to support the trial court's order. State v. Brown, 18 S.W.3d 482, 484 (Mo. App. E.D. 2000). In doing so, we view all facts and reasonable inferences in favor of the trial court's ruling. State v. Dye, 946 S.W.2d 783, 786 (Mo. App. E.D. 1997). The challenged ruling of the trial court will not be disturbed absent manifest error. Id. However, whether a suspect was in custody is an issue of law that we review de novo. State v. Little, 473 S.W.3d 662, 667 (Mo. App. E.D. 2015).

---

[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A criminal suspect is entitled to Miranda warnings, consistent with his Fifth Amendment right against self-incrimination, once the suspect is subjected to a "custodial interrogation." Miranda, 384 U.S. at 444; State v. Werner, 9 S.W.3d 590, 595 (Mo. banc 2000). The Missouri Supreme Court has enumerated six factors to take into consideration when determining custody: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced with official requests to answer questions; (4) whether strong-arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of questioning. Werner, 9 S.W.3d at 595. Determination of custody is not limited to applying these factors, but their presence and absence guide courts in assessing the totality of the circumstances surrounding interrogations. Werner, 9 S.W.3d at 596; State v. Hill, 247 S.W.3d 34, 44 (Mo. App. E.D. 2008). The "ultimate inquiry" is whether the restraint on the suspect's movement rose to the degree associated with a formal arrest. Hill, 247 S.W.3d at 45.

Before trial, Defendant filed a motion to suppress her statements to the investigator. A hearing was held on the motion wherein the investigator testified. Following the hearing and upon reviewing the evidence, the trial court denied the motion to suppress.

Here, after weighing the totality of the circumstances, we find, as the trial court did, that none of the factors determinative of custody are present. First, Defendant agreed to be interviewed. Second, the investigator was not coercive or intimidating. Moreover, at the end of the interview, Defendant thanked the investigator for his kindness and "said that she

9

appreciated that [he] wasn't judgmental towards her regarding the circumstance." Finally, the investigator was not wearing a uniform, did not have a gun, did not have handcuffs, did not indicate that he would or could take Defendant into custody, and the suspect was free to leave throughout the course of the interview.

Based on the record, we find that Defendant was not in custody because the restraint on her did not rise to a degree associated with formal arrest. Because Defendant was not subject to custodial interrogation, the investigator was not required to inform Defendant of her Miranda rights before initiating questioning. Accordingly, the trial court did not err in allowing Defendant's statements into evidence at trial. Point II is denied.

Conclusion

The judgment is affirmed.

_Mary K. Hoff_
_____
Mary K. Hoff, Judge

Robert M. Clayton III, Presiding Judge, and Lisa P. Page, Judge, concur.

10