STATE of Missouri, Plaintiff–
Appellant,

v.

George Owen HARPER, Defendant–
Respondent.

No. SD34629

Missouri Court of Appeals,
Southern District,
Division One.

Filed: Apr. 11, 2017

JOSHUA P. JONES, Osceola, MO, for Appellant.

MICHAEL C. DAWSON, El Dorado Springs, MO, for Respondent.

1. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

DON E. BURRELL, J.

The State appeals the suppression of statements George Owen Harper ("Defendant") made to a deputy sheriff who stopped Defendant's vehicle to question him about potential criminal activity. The State claims the suppression (based on the trial court's conclusion that a *Miranda*[1] violation had occurred) was erroneous because Defendant was not in custody at the time of the questioning. Finding merit in that claim, we reverse the trial court's order suppressing Defendant's statements and remand the matter for further proceedings on the State's misdemeanor charges of unlawful use of a weapon and two counts of third-degree assault. *See* sections 571.030.1 and 565.070.[2]

### Applicable Principles of Review and Governing Law

We "will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous." *State v. Holman*, 502 S.W.3d 621, 624 (Mo. banc 2016). "This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defers to the trial court's determinations of credibility. The inquiry is limited to a determination of whether the trial court's decision is supported by substantial evidence." *State v. Stover*, 388 S.W.3d 138, 155 (Mo. banc 2012) (citation omitted). We owe no deference to the trial court on its legal conclusions, which we review *de novo*. *State v. Gaw*, 285 S.W.3d 318, 319 (Mo. banc 2009).

"Missouri courts analyze issues regarding the privilege against self-incrimination claimed under the Missouri Constitution in a manner consistent with analysis of those arising under the federal constitution." *State v. Brooks*, 185 S.W.3d

2. All statutory references are to RSMo Cum. Supp. 2013.

265, 273 (Mo. App. W.D. 2006). *"Miranda* warnings are not required every time the police question an individual." *State v. Glass*, 136 S.W.3d 496, 510 (Mo. banc 2004). Because "[a] criminal suspect is entitled to *Miranda* warnings once the suspect is subjected to a custodial interrogation[,]" *Stover*, 388 S.W.3d at 155, "[s]tatements obtained during a custodial interrogation not preceded by *Miranda* warnings are subject to suppression at trial." *Id.* at 155. "[T]he U.S. Supreme Court has determined that the 'in custody' determination is to be reviewed as a matter of law." *State v. Brooks*, 185 S.W.3d 265, 274 (Mo. App. W.D. 2006) (citing *Thompson v. Keohane*, 516 U.S. 99, 111–15, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)).

■ "In Missouri, 'custodial interrogation' is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Glass*, 136 S.W.3d at 511. "That the dictates of *Miranda* do not apply in the context of a valid *'Terry* stop' was established in *Berkemer*, where the Court held that 'persons temporarily detained pursuant to [*Terry*] stops are not "in custody" for the purposes of *Miranda.*'" *State v. Tally*, 153 S.W.3d 888, 896 (Mo. App. S.D. 2005) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)); *see also Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, depending upon events following such a temporary detention, "a valid *Terry* stop may evolve into a custodial setting in which the

dictates of *Miranda* will apply." *Tally*, 153 S.W.3d at 896.

### Evidentiary and Procedural History

■ St. Clair County Sheriff's Corporal Alec Lawson ("Corporal Lawson") was the only witness at the July 2016 suppression hearing, and he provided the following testimony. After dark on the evening of February 1, 2016, while acting as a patrol supervisor, Corporal Lawson activated the emergency lights on his vehicle to stop a truck Defendant was operating on Highway 82.[3] Corporal Lawson made the stop because his dispatcher had announced that someone named Lois Lyke had called to report that Defendant "had fired a weapon at her on Northeast 450 Road. And, as she was leaving that area, [Defendant] was following her down the roadway." It was Corporal Lawson's understanding that Ms. Lyke had indicated that she "had stopped at Osceola Cheese and the suspect vehicle was headed southbound on 13 Highway." The suspect vehicle was described as "a dark or black-colored Ford truck, kind of two tone with a gray bottom."

Corporal Lawson knew Defendant "prior to this incident[,]" but he "did no independent investigation" into the information provided by the dispatcher. Instead, he responded to the reported area, where he saw a truck matching the description given by Ms. Lyke. The truck was "traveling southbound, taking the exit ramp onto 82 Highway." When Corporal Lawson tried "to confirm" the license plate number on the truck, it "came back not on file."

After Corporal Lawson activated his lights, Defendant drove his vehicle into a

---

**3.** "In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising from the facts are to be stated most favorably to the order challenged on appeal. We will disregard any evidence that contradicts the order." *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998) (citation omitted). As more fully discussed, *infra*, based upon the content of the trial court's order granting Defendant's motion to suppress, we regard the trial court to have suppressed Defendant's statements based upon the facts described by Corporal Lawson.

parking lot and stopped. Corporal Lawson did not "stop [the vehicle] for any kind of traffic violation"; rather, he wanted to talk to Defendant about "[t]he allegations that Mrs. [sic] Lyke had called in to the sheriff's office."

Corporal Lawson approached the vehicle and recognized Defendant as the driver. Defendant "remain[ed] seated in [his] vehicle the entire time[.]" Corporal Lawson did not tell Defendant that he was under arrest at any point during the encounter. Corporal Lawson did not tell Defendant that he had the right to refuse to answer questions and the right to request an attorney. After Defendant provided Corporal Lawson with "a statement ... about the allegations[,]" Defendant was allowed to leave. The entire encounter lasted "[a]pproximately five to seven minutes."

About a month later, the State filed a misdemeanor information charging Defendant with unlawful use of a weapon by knowingly shooting "a firearm across a highway" and two counts of third degree assault by purposely placing Ms. Lyke and another woman "in apprehension of immediate physical injury by standing at the end of the driveway and shooting a firearm into the road after [each woman] drove by him." Defendant moved to suppress "all evidence arising out of [his] unlawful detention and unlawful arrest[.]"

At the conclusion of the suppression hearing, defense counsel argued that there were two issues; first, whether "it takes more than a ... dispatch call to justify the stopping, the detention of a member of the public who is violating no other law"; and, second, whether an officer investigating a crime has "any obligation to provide [the individual being questioned with] Miranda warnings" given that "custody is a multi-faceted thing." The trial court correctly indicated at the end of the suppression hearing that the legal issue to. be decided was "whether there was an obligation to Mirandize .... given the facts of the ... stop."[4] The trial court informed counsel that they "could brief both if you want, but it's the obligation to Mirandize, given the facts of the ... stop."

The parties filed briefs, and on September 2, 2016, the trial court entered an order granting the motion to suppress. Five days later, the trial court entered a **"FIRST AMENDED RULING ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE"** that also granted the suppression motion ("the suppression order"). The suppression order found, *inter alia*, that when Corporal Lawson approached Defendant's motor vehicle, the officer "was wearing his police uniform with his weapon in plain view." Corporal Lawson "questioned [Defendant] about something he had been told by someone else rather than about something he observed[,]" and "[a]t no time did Corporal Lawson recite the warnings required under *Miranda*. Defendant was not arrested as a result of the stop." The suppression order did not find that Corporal Lawson lacked a sufficient basis to make a *Terry* stop of Defendant.[5]

---

4. *Cf. **State v. Shelli***, 675 S.W.2d 79, 80–81 (Mo. App. E.D. 1984) (a person who identified himself by his last name described two persons loading what the caller believed was marijuana into a vehicle specifically described by the caller, including the license plate number; it was therefore unnecessary to establish the named caller's previous reliability in order to stop the car matching the description).

5. Indeed, had the trial court found that the stop of Defendant's vehicle was itself improper, it would have had no need to proceed to its analysis of whether Defendant was in custody during the stop as "[e]vidence obtained in violation of [the constitutional right to be free from unreasonable searches and seizures] is excluded from evidence in state court." ***State v. Flowers***, 420 S.W.3d 579, 581 (Mo. App. S.D. 2013). In his brief, Defendant mis-

The suppression order reasoned that "[t]here is no doubt that when a law enforcement officer uses his light bar to stop a vehicle because of a suspected traffic violation, if that suspect should drive off or jump out of the car and run, he would be chased, tracked, and arrested."

The suppression order further stated that "[t]he intent to question Defendant appears to be the only reason for Defendant's detention." The trial court concluded from these factual findings that "Defendant had a reasonable belief that he was being detained[,] [sic] that [Defendant] should have received a *Miranda* warning as required by law before being questioned concerning an alleged event that was not something that would have otherwise given rise to a traffic stop."

This statutorily-authorized interlocutory appeal by the State timely followed. *See* section 547.200.1(4) and .4.

## Analysis

■ The State's point claims "the trial court incorrectly held that Corporal Lawson was constitutionally required to provide [Defendant] with *Miranda* warnings prior to questioning him" because Defendant was not in custody. The State acknowledges that whether a subject is "in custody" depends upon "how a reasonable man in the suspect's position would have understood his situation[,]" *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138, and that "[c]ustody is determined by an examination of the totality of the circumstances." *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000). The State then maintains that "[t]raffic stops and investigative (*Terry*)

stops are not, without more, full custodial arrests requiring the giving of *Miranda* warnings." In other words, just because Defendant was stopped by Corporal Lawson for the purpose of asking him about the dispatcher's report and then briefly questioned about that report did not mean that Defendant was in custody for purposes of determining the necessity of a *Miranda* warning.

■ In support of this argument, the State relies on *Berkemer*, in which the United States Supreme Court discussed that an officer who "lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion." 468 U.S. at 439, 104 S.Ct. 3138 (quotations and footnote omitted). The opinion reasons that the Fourth Amendment permitted the stop, and it also permitted "ask[ing] the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." *Id.* The Court then linked the Fourth–Amendment analysis to an analysis of when the necessity of a *Miranda* warning is triggered as follows:

> The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such

takenly relies on principles announced in *Terry*-stop cases involving stops made in response to *anonymous* reports of crime. *Cf. id.* at 584–85 (parties agreed "that the dispatch information should be treated as having 'been anonymously placed' and that corroboration was thereby required for purposes of establishing reasonable suspicion"). Here, the first and last name of the person asserting that she was a victim a crime perpetrated by Defendant was reported to Corporal Lawson.

stops are not "in custody" for the purposes of Miranda.

*Id.* at 440, 104 S.Ct. 3138. Thus, the *Miranda* safeguards apply only if a traffic or *Terry* stop progresses to restrictions constituting "a 'degree associated with formal arrest.'" *Id.*

We agree with the State that *Berkemer* is the relevant controlling authority in resolving this appeal, and an application of its principles reveals that the trial court erred in concluding that Defendant should have received a *Miranda* warning because Defendant was in custody (or its equivalent) based upon the trial court's factual findings that: (1) Corporal Lawson was in "uniform with his weapon in plain view" when he approached Defendant; (2) "[t]he officer questioned about something he had been told by someone else rather than about something he observed"; and (3) Defendant would have been "chased, tracked, and arrested" if he had not stopped his vehicle.

A reasonable person would not believe himself to have been arrested simply because the officer who approached him from a patrol vehicle was in uniform with a weapon in view. In *State v. Scott*, 926 S.W.2d 864, 869 (Mo. App. S.D. 1996), we rejected a defendant's argument that he was detained when he consented to a search based in part on the visibility of the troopers' firearms, and we reasoned that

> the fact that the troopers carried holstered firearms is feeble at best. Many law enforcement officers, especially those on routine patrol, do carry holstered firearms while on duty. Common sense dictates that an officer carrying a holstered weapon does not amount to "display of a weapon," for to construe the factor otherwise would vitiate nearly every consensual search.

The same reasoning applies here.

■ Further, Defendant was not "in custody" or the equivalent simply because

the officer did not personally observe Defendant engaging in suspicious behavior. While the *Berkemer* opinion referenced a police officer's personal observations in discussing questioning following *Terry* stops, 468 U.S. at 439, 104 S.Ct. 3138, it does not follow that only stops that result from an officer's personal observations may justify brief questioning during a *Terry* stop without a *Miranda* warning being given. The purpose of a *Terry* stop is to permit the officer to "briefly stop the suspicious person and *make reasonable inquiries aimed at confirming or dispelling these suspicions.*" *State v. Lovelady*, 432 S.W.3d 187, 191 (Mo. banc 2014) (emphasis added). We are unaware of any authority suggesting that a reasonable person is more likely to conclude that he or she is under arrest because the officer's reasonable inquiries are based on something reported to him as opposed to behavior that the officer personally witnessed.

■ Finally, the assumption that an officer would try to pursue and arrest a subject who drove off or ran away while the officer was trying to make a *Terry* stop does not support an argument that Defendant, who did not flee, was in custody here. We observe that for seizure purposes, "[o]nce the police have reasonable suspicion needed to justify an investigatory stop, they may use forcible means reasonably necessary to effectuate that stop without converting it into an arrest." *State v. McKeehan*, 894 S.W.2d 216, 220 (Mo. App. S.D. 1995). And, for purposes of "custody" triggering *Miranda* warnings, it does not follow that a *Terry* stop that occurs *without* the detainee engaging in such elusive behavior necessarily rises to the degree of restraint involved for putting someone in custody "or otherwise depriv[ing him] of his freedom of action in any significant way." *Glass*, 136 S.W.3d at

511. Assuming, *arguendo*, the existence of general authority by the police to use force if necessary to complete a ***Terry*** stop, the possibility that such authority *may* be exercised does not convert all ***Terry*** stops into custodial interrogations for purposes of ***Miranda***.

The State's point is granted, the suppression order is reversed, and the case is remanded for further proceedings consistent with this opinion.

JEFFREY W. BATES, P.J.— CONCURS

MARY W. SHEFFIELD, C.J.— CONCURS