**STATE of Missouri, Respondent,**

v.

**Kelvin J. GAYLORD, Appellant.**

**WD 79525**

Missouri Court of Appeals,
Western District.

OPINION FILED: June 20, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied August 1, 2017

J. Eric Mitchell, Clinton, MO, Counsel for Appellant.

Robert Bartholomew, Jr., Jefferson City, MO, Counsel for Respondent.

Before Division Two: Thomas H. Newton, P.J., James Edward Welsh, and Karen King Mitchell, JJ.

James Edward Welsh, Judge

Kelvin J. Gaylord appeals the circuit court's judgment, following a jury trial, convicting him of two counts of the class D felony of sexual contact with a prisoner, in violation of section 566.145, RSMo.[1] We affirm.

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement, unless otherwise noted.

## Background

Gaylord was charged by felony information with one count of first-degree rape or attempted rape, two counts of first-degree sodomy or attempted sodomy, armed criminal action, and three counts of sexual contact with a prisoner. Gaylord was tried before a Cass County jury.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that, at the time of Gaylord's crimes, he was a deputy with the Henry County Sheriff's Office. As part of his job as a bailiff, Gaylord regularly transported prisoners to and from the county jail. Sheriff Kent Oberkrom, who is in charge of the jail, the bailiffs, and all patrol divisions, testified that, in 2014, Gaylord had transported prisoners from one jail to another jail on twenty-one occasions.

On July 29, 2014, Gaylord was assigned to transport a female prisoner, whom we refer to as L.H.,[3] from a jail in Jackson County to the Henry County Jail. Gaylord drove to Jackson County in a patrol vehicle that was equipped with patrol lights and the logo of the Henry County Sheriff's Office. He was wearing the uniform and badge of a Henry County Deputy and was equipped with a gun belt and gun. When Gaylord arrived in Jackson County, officers there shackled L.H.'s ankles and wrists, and Gaylord placed her in the back seat of his patrol vehicle.

L.H. testified that, shortly after leaving, Gaylord pulled the vehicle over and moved her to the front seat, purportedly so he "could hear her better." Gaylord soon began to discuss his personal life with L.H. When he told her that other female prisoners had performed sex acts on him, L.H. felt that he was asking her to do the same.

Gaylord made several more sexually explicit comments to L.H., and she could see that he was becoming visibly angry. Gaylord then turned off the highway onto an outer road. When he drove into what looked like a cornfield and stopped the vehicle, L.H. thought, "I am not getting out of here alive."

L.H. told the jury that Gaylord got out of the vehicle, put his gun belt in the trunk, and then approached her with a gun in his hand. He began to graphically describe various sex acts that he was going to force L.H. to do, and he threatened to kill her if she did not comply. While holding the gun to L.H.'s head, Gaylord subjected her to the sex acts he had been describing. L.H. stated that Gaylord ejaculated into her vagina and mouth and on her hair and shirt, and she used a paper towel from his car to clean herself. Afterwards, Gaylord ordered L.H. to lift her shirt and use his cell phone to take a picture of her breasts. She complied.

Deputy Laverna Dee Locke testified that she was working as a jailer when Gaylord brought L.H. into the Henry County Jail. Locke saw that L.H. was crying, shaking, and appeared disheveled, with her hair standing up. After Gaylord left the jail, L.H. told Locke that she had been sexually assaulted by Gaylord during transport. The jail administrator interviewed L.H. about her allegations, and then Deputy Locke drove her to Lee's Summit Hospital for a sexual assault exam. The examining nurse testified that she took swabs from various places on L.H.'s body for DNA testing. She told the jury that, during the exam, L.H. was "very upset," "crying," and "hysterical" and was

---

2. *See State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

3. We refer to the victim by her initials to protect her privacy. *See* § 595.226.1, RSMo 2017.

afraid of being returned to the Henry County Jail.

Sheriff Oberkrom testified that he questioned Gaylord about the allegations. Gaylord told him that he had moved L.H. to the front seat and later exited the highway and drove into a cornfield. Gaylord also admitted that, after putting his gun belt in the trunk, he received oral sex from L.H. He claimed that L.H. had offered to do so.

The deputy assigned to investigate the matter spoke with L.H. twice and then interviewed Gaylord. Gaylord initially denied that anything sexual had happened with L.H. Later, when the deputy asked Gaylord how he ended up in this situation, Gaylord said that "he was weak" and "had a lot going on in his life." Following the interview, the deputy obtained a buccal swab from Gaylord for DNA testing. A video recording of that interview was played for the jury.

After determining that the offense occurred in Cass County, Sheriff Oberkrom turned the investigation over to the Cass County Sheriff's Office. One Cass County detective obtained additional DNA buccal swabs from Gaylord. Another went to the crime scene, where he recovered a paper towel that the victim had used to clean herself after the assault. That paper towel matched a roll that Gaylord kept in his patrol car. At trial, two DNA criminalists testified that they found Gaylord's DNA both on the paper towel recovered from the scene and in a vaginal swab from L.H.'s sexual assault exam.

Gaylord did not present any evidence. The court denied his motion for judgment of acquittal at the close of all the evidence. The jury convicted Gaylord on two counts of sexual contact with a prisoner (specifically, sexual intercourse and oral inter-

course). The court denied Gaylord's post-trial motions and sentenced him to two concurrent four-year prison terms.

## Discussion

Gaylord argues on appeal that the circuit court erred in denying his motion for judgment of acquittal and entering judgment against him on both counts. He contends that there was insufficient evidence to prove, pursuant to section 566.145, that he was *"an employee of, or assigned to work in, any jail"* (**Point I**), or that he had sexual contact with a *"prisoner or offender who is confined in a jail,"* in that the only evidence was "that there was sexual contact in a cornfield in Cass County" (**Point II**).

■ In determining the sufficiency of the evidence to support a conviction, we are limited to determining whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty of each element of the crime beyond a reasonable doubt.[4] *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). In applying this standard, we accept all the evidence and inferences favorable to the judgment as true, and we disregard all evidence and inferences to the contrary. *Id.* at 407-08. We defer to the jury's assessment of the credibility and the weight to give each witness's testimony. *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990).

■ To convict a defendant of a criminal offense, the State must prove beyond a reasonable doubt every element of the offense charged. *See Crawford*, 68 S.W.3d at 408. Here, the elements of the offense charged are found in section 566.145, which then provided that "[a] person com-

4. We review a challenge to the trial court's denial of a motion for judgment of acquittal

under this same standard. *See State v. Browning*, 357 S.W.3d 229, 233 (Mo. App. 2012).

mits the crime of sexual contact with a prisoner or offender if" that person

> is *an employee of, or assigned to work in, any jail*, prison or correctional facility and such person has sexual intercourse or deviate sexual intercourse with *a prisoner or an offender who is confined in a jail*, prison, or correctional facility.

§ 566.145.1(1) (emphasis added). The "[c]onsent of a prisoner or offender is not an affirmative defense." § 566.145.4. Here, Gaylord claims that the State failed to prove the elements of the offense charged because there was insufficient evidence that he was "an employee of, or assigned to work in any jail" or that L.H. was a "prisoner or offender who is .confined in a jail."

Gaylord argues, in essence, that neither his nor L.H.'s circumstances satisfied the provisions of the statute. To the extent that our review involves the interpretation of statutory language, that is a question of law, which we review *de novo. State v. Redifer*, 215 S.W.3d 725, 732 (Mo. App. 2006). In interpreting a statute, our goal is to determine the intent of the legislature based on the plain and ordinary meaning of the words used and to give effect to that intent. *Id.* Where the words used are not defined in the statute, they are "given their plain and ordinary meaning as derived from the dictionary." *State v. Barnett*, 504 S.W.3d 807, 812 (Mo. App. 2016). If we find that the statute's language makes the intent of the legislature clear and unambiguous, "then we are bound by that intent." *Redifer*, 215 S.W.3d at 732. The language of section 566.145 is clear and unambiguous. *See Barnett*, 504 S.W.3d at 813 (finding that the language of section 566.145 clearly conveys the legislature's intent in enacting it).

In *Barnett*, the appellant made arguments similar to Gaylord's. *Id.* at 811-13.

Barnett, who was working as a teacher at a facility for juvenile offenders when she was convicted of violating section 566.145, also claimed that she was not "an employee of, or assigned to work in any jail, prison or correctional facility." *Id.* at 811. After examining the plain language of the statute, the *Barnett* Court found that "it is obvious that the intent of the legislature in creating [this crime] was to prohibit sexual contact between inmates and the employees in positions of power over them." *Id.* at 813. The Court held that, as a teacher employed at a rehabilitation center for youth inmates, Barnett was an " 'employee' of a facility squarely within the meaning of [the statute]." *Id.* As such, she fell "within the group of people the law intended to prohibit from having sexual contact with [those] under their control." *Id.*

The same is true here. It is undisputed that, as part of Gaylord's job, he was authorized by the Sheriff to transport prisoners to and from the Henry County Jail, and he regularly transported prisoners from one jail to another jail. In performing this aspect of his job, Gaylord used a patrol vehicle marked with the Henry County Sheriff logo. He was expected to follow all the policies and regulations of the Sheriff's Department and, necessarily, the jail. This evidence was sufficient to establish that, at the time of his crimes, Gaylord was "assigned to work in a jail" and, thus, fell "within the group of people [section 566.145] intended to prohibit from having sexual contact with [those] under their control." *See id.* Point I is denied.

■ Gaylord's second point, that L.H. was not "a prisoner confined in a jail," also is without merit. The appellant in *Barnett* also claimed that the juvenile with whom she had sexual contact was not "an offender or prisoner confined in a jail, prison or correctional facility" under section 566.145. 504 S.W.3d at 811. After examining the

statutory definition of "offender"[5] and the dictionary definitions of "jail, prison or correctional facility," the appellate court found that the juvenile was an "offender" and that the facility where he was being held was a "jail, prison or correctional facility" within the meaning of the statute. *Id.* at 812-13. The Court concluded that the State sufficiently proved that Barnett had violated section 566.145 because the juvenile was an "offender" in a facility that fell "squarely within the meaning" of the statute, and, as discussed *supra*, Barnett was an "employee" of that facility. *Id.* at 813.

Here, too, the State presented sufficient evidence that L.H. was a prisoner in the custody of a jail. Section 566.145.2(2) defines a "prisoner" as "any person who is in the custody of a jail, whether pretrial or after disposition of a charge." Henry County Jail Administrator Sam Boyd testified that a prisoner in transport to his jail is within the care and control of the Henry County Jail from the moment a Henry County officer signs for them at the pickup location. Boyd stated that, once a Henry County officer left with a prisoner in his or her custody, the prisoner was *in the jail's custody*. Thus, when the sexual contact between Gaylord and L.H. occurred, L.H. was a "prisoner" in the custody of a jail, pursuant to section 566.145.

■ Gaylord claims, nevertheless, that he did not violate section 566.145 because "there was absolutely no evidence" that L.H. was "confined in a jail" at the time of the sexual encounter. Gaylord notes that the sexual contact took place "in a cornfield," and he asserts that "the statute does not prohibit sexual intercourse or deviate sexual intercourse while in transport." This argument is wholly without merit. The phrase, "has sexual intercourse ... with a prisoner who is confined in a jail," refers to *the status of the prisoner*

at the time of the sexual contact; it does not mean that the sexual contact must have taken place *within the walls of a jail,* as Gaylord suggests. Gaylord's interpretation leads to an absurd result that is inconsistent with the obvious legislative intent. *See State v. Slavens*, 375 S.W.3d 915, 919 (Mo. App. 2012) (we will not interpret a statute in such a manner as to lead to an absurd result).

As established in *Barnett*, the legislature's obvious intent in enacting the statute was to prohibit sexual contact between prisoners and the employees who are *"in positions of power over them."* 504 S.W.3d at 813 (emphasis added). Here, the evidence indisputably established that Gaylord was in a position of power over this prisoner at the time of the offense. After the Jackson County jailers transferred L.H. into Gaylord's custody, she was confined in Gaylord's official vehicle with her ankles and wrists shackled. In transporting her to the Henry County Jail, Gaylord wore a deputy sheriff uniform and badge and was equipped with a gun (all of which he used to intimidate L.H.), and he was acting on behalf of the Henry County Jail and Sheriff's Department. Point II is denied.

In sum, the State presented sufficient evidence from which a rational finder of fact could conclude that Gaylord committed the offense of "sexual contact with a prisoner," as defined in section 566.145. Thus, the circuit court did not err in denying Gaylord's motion for judgment of acquittal and entering judgment against him. We affirm the circuit court's judgment.

All concur.

---

**5.** Section 566.145.2(1) defines an "offender" as "any person in the custody of a prison or correctional facility" or on probation or parole.