

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI, )
)
    Respondent, ) No. SD36468
)
vs. ) **Filed:** December 15, 2020
)
CALVIN L. TRENT, )
)
    Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Judge James V. Nichols

**AFFIRMED**

Calvin L. Trent ("Defendant") appeals his convictions for first-degree murder, § 565.020, and armed criminal action, § 571.015, following a jury trial.[1] Defendant claims the trial court erred in: (1) admitting into evidence his statements to law enforcement because he did not receive his ***Miranda***[2] warnings; (2) overruling his motion to dismiss the first-degree murder count because the State's opening statement did not contain sufficient facts on the element of deliberation; and (3) overruling his motion for judgment of acquittal on the first-degree murder count because there was

---

[1] All statutory citations are to RSMo. (2016), unless otherwise indicated.
[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

insufficient evidence on the element of deliberation. Defendant's arguments are without merit, and the trial court's judgment is affirmed.

## Factual and Procedural Background

The evidence is viewed in the light most favorable to the jury's verdict. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005).

The body of Devin Hunt ("Victim") and his bicycle were found in a creek near Sons Creek bridge. An autopsy of Victim's body later revealed three gunshot wounds to Victim's head and one to his shoulder/collar bone fired from two different weapons.

Law enforcement was informed Victim had been in a relationship with Defendant's daughter, Connie Trent ("Daughter"). Trooper Rutledge, Trooper Tyrell, Sergeant Nash, and Sergeant Bracker with the Missouri State Highway Patrol went to Defendant's residence to speak with Daughter.[3] At this point in the investigation, they did not have any suspects. When the troopers arrived, Defendant's wife invited them into the house and asked if they could help her get Defendant, who has a prosthetic leg, into his wheelchair after he had fallen onto the bathroom floor. Sergeant Nash, Trooper Tyrell, and Trooper Rutledge assisted Defendant's wife in getting Defendant into his wheelchair, while Sergeant Bracker spoke to Daughter.

Daughter told Sergeant Bracker her brother Willis ("Son") and Defendant had left "to go find [Victim]" because Son and Defendant believed Victim "was going to report them for selling their prescription narcotics illegally" and that they were going to "take care of the situation[.]" Sergeant Bracker informed the other troopers of Daughter's statements.

---

[3] A fifth officer, Sergeant Rawson, later arrived on scene and participated in the investigation.

Defendant's wife wheeled Defendant out of the house and to a location under an oak tree in their yard, where he remained for approximately two hours. Sergeant Nash asked Defendant if he would be willing to speak with him about Victim and Defendant agreed. Sergeant Nash recorded the interview by placing a tape recorder in a notebook on the chair next to Defendant. Defendant's wife was present during most of the questioning.

Sergeant Nash asked the majority of the questions, although other officers also participated. He began by telling Defendant they were "trying to figure out what happened to [Victim,]" and they had heard Defendant might have been "upset with [Victim] over the last couple of days." Defendant told Sergeant Nash he had been upset with Victim "for the last six months" and initially denied his involvement in Victim's death. Sergeant Nash proceeded to question Defendant.

Defendant eventually admitted he had seen Victim at the Sons Creek bridge when he and Son "[w]ent to talk to [Victim]." Defendant stated he shot Victim with "[t]he .45" while Victim was riding his bicycle towards Defendant's truck. Defendant admitted he "got [Victim] once in the shoulder. Gave him something to remind me of." After Victim was shot, Victim started peddling away faster trying to flee. Defendant stated he turned the truck around on the bridge, chased Victim and "clipped him with the bumper of the truck." Defendant and Son tried to "put [Victim] in the back of the truck, but he wouldn't stay there." Defendant stated he was with Son when Son shot Victim in the head and he later helped Son dump Victim's body off the bridge. Defendant was arrested after the questioning concluded.

During Defendant's interrogation, Son arrived at the residence. Sergeant Nash spoke with Son. Son admitted to Sergeant Nash that he and Defendant shot Victim.

3

While at Defendant's residence, the troopers seized several guns, including a .45 caliber and a .22 caliber gun.

In addition to the recorded statement[4] and the testimony of several officers, the jury heard testimony from Jacob Watts ("Watts"). According to Watts, Defendant drove the truck to Watts' house after shooting Victim.[5] Defendant told Watts "they had found [Victim] on the road, going to work on his bike. And [Defendant] said . . . he had shot [Victim] in the chest with a .45 and then [Son] had a .22 and shot [Victim] with it." Defendant told Watts they shot Victim because Victim had "threatened to turn them in for selling pills." After Defendant's arrest, Watts went to retrieve the truck. He saw blood in the bed of the truck and found a name tag belonging to Victim.

The jury found Defendant guilty of first-degree murder and armed criminal action. He was sentenced to life without the possibility of parole and to thirty years' imprisonment with the sentences to run consecutively to each other. This appeal followed.

## Discussion

### Point 1: Non-Custodial Interrogation

In point 1, Defendant argues the trial court erred in overruling the motion to suppress his recorded statement and his subsequent objection at trial because he was in custody when the statement was taken and was not given his *Miranda* warnings.

We review the trial court's ruling on a motion to suppress in the light most favorable to the ruling and defer to the trial court's determinations of credibility. *State v. Rice*, 573 S.W.3d 53, 66 (Mo. banc 2019). A trial court's ruling on a motion to

---

[4] The transcript of this statement, but not the recording itself, is included in the record on appeal. The recorded statement was played for the jury over Defendant's objection.
[5] Defendant was driving Watts' truck under a rent-to-own arrangement.

suppress will only be reversed if the decision is clearly erroneous. *State v. Harper*, 517 S.W.3d 1, 2 (Mo. App. S.D. 2017). A ruling is clearly erroneous if we are "left with a definite and firm belief a mistake has been made." *Rice*, 573 S.W.3d at 66 (quoting *State v. Holman*, 502 S.W.3d 621, 624 (Mo. banc 2016)). Whether a suspect was in custody for *Miranda* purposes is an issue of law that we review *de novo*. *State v. Little*, 473 S.W.3d 662, 667 (Mo. App. E.D. 2015).

The right to *Miranda* warnings is not triggered during non-custodial interrogations. *State v. Glass*, 136 S.W.3d 496, 510-11 (Mo. banc 2004). "In Missouri, 'custodial interrogation' is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Harper*, 517 S.W.3d at 3 (quoting *Glass*, 136 S.W.3d at 511). "Ordinarily, suspects are in custody when they have been informed that they are under arrest or when restraints have been placed on them." *State v. Quick*, 334 S.W.3d 603, 612 (Mo. App. W.D. 2011). "When there is no declaration of arrest, and no physical restraint, the usual assumption is that a suspect is not in custody." *Id.* (quoting *State v. Brooks*, 185 S.W.3d 265, 273 (Mo. App. W.D. 2006)). A person who is being asked preliminary investigatory questions by the police is generally not in custody and need not be advised of his rights under *Miranda*. *Id.* at 611-12. "The simple fact that investigative questioning takes place in a potentially coercive environment does not require *Miranda* warnings[.]" *State v. Lammers,* 479 S.W.3d 624, 632 (Mo. banc 2016) (quoting *State v. Isa*, 850 S.W.2d 876, 894 (Mo. banc 1993)). However, there are instances where a person can be in custody absent a formal declaration of arrest and handcuffs or other physical restraints placed on the suspect. *Quick*, 334 S.W.3d at 612.

5

In determining if a person is in custody, we consider the totality of the circumstances, including the accused's freedom to leave the scene and the purpose, place, and length of an interrogation. ***State v. Bruce***, 503 S.W.3d 354, 357 (Mo. App. S.D. 2016). The Supreme Court of Missouri has identified six factors for courts to take into consideration when determining custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;
>
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
>
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to answer questions;
>
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
>
> (5) whether the atmosphere was police dominated; or,
>
> (6) whether the suspect was placed under arrest at the termination of questioning.

***State v. Werner***, 9 S.W.3d 590, 595 (Mo. banc 2000). These factors, while not exhaustive, serve as a guide.[6] ***Bruce***, 503 S.W.3d at 358. Our determination of custody must be resolved based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." ***Id.*** (quoting ***State v. Hill***, 247 S.W.3d 34, 46 (Mo. App. E.D. 2008)). "[T]he ultimate question before us is whether a reasonable person would have felt at liberty to terminate or leave the interrogation." ***Id.***

---

[6] We may also consider an individual's personal background, experience, familiarity with police questioning, maturity, education, and intelligence. ***Bruce***, 503 S.W.3d at 357.

Defendant argues that his interrogation was custodial. In making this argument, Defendant emphasizes that he uses a wheelchair, that the police used deceptive interrogation practices, that the interview lasted about two hours, that there were several officers present at his residence, and that he was arrested after the interview. These facts alone do not tip the interrogation into custodial territory.

While Defendant is correct that one factor of our analysis concerns whether the suspect possessed unrestrained freedom of movement and that a person in a wheelchair may inherently possess less freedom of movement than someone without a disability, the type of restraint we are concerned with for purposes of *Miranda* is police-imposed restraint—the type of restraint suggestive of being in police custody. *See e.g.* *State v. Harris*, 581 S.W.3d 711, 715-16 (Mo. App. E.D. 2019) (holding that physical restraint imposed by paramedics instead of police does not create the inherently coercive environment contemplated by *Miranda*); *State v. Barnett*, 504 S.W.3d 807, 814 (Mo. App. E.D. 2016) ("The investigator was not wearing a uniform, did not have a gun, did not have handcuffs, did not indicate that he would or could take Defendant into custody, and the suspect was free to leave throughout the course of the interview."). Here, the officers were conducting an ongoing murder investigation and originally came to the residence to question Daughter. Their first contact with Defendant was when they were asked to help him. Defendant was not under arrest, was never prevented from leaving his front yard, never handcuffed, nor did he request that questioning cease. The officers did not restrict Defendant's movement.

Defendant argues that law enforcement falsely suggested to Defendant that they had access to location data from Defendant's cell phone and had received reports from loggers identifying a vehicle similar to Defendant's near the Sons Creek bridge.

However, "[s]tatements obtained by subterfuge on the part of police 'are admissible unless the deception offends societal notions of fairness or is likely to produce an untrustworthy confession.'" *State v. Faruqi*, 344 S.W.3d 193, 204 (Mo. banc 2011) (quoting *State v. Davis,* 980 S.W.2d 92, 96 (Mo. App. E.D. 1998)). Here, the officers' false representations about the cell phone records and the loggers did not offend societal notions of fairness. Nothing in the false representations about cell phone records or witnesses seeing a vehicle near a crime scene would inherently coerce a suspect who had not been at or near the crime scene to falsely confess.[7]

Likewise, the other circumstances—a constant police presence, the two-hour questioning, and his arrest afterward—do not change the overall tenor of the interrogation from voluntary cooperation to police coercion. A defendant's voluntary acquiescence to questioning by law enforcement absent physical restraints, even when accompanied by deceptive law enforcement tactics and resulting in the defendant's arrest, does not turn a voluntary interrogation into a custodial one. *See Bruce*, 503 S.W.3d at 358-59. Although there were a number of officers on the premises, there was no indication they were clustered around Defendant or prevented him in any way from leaving his location had he chosen to do so. The officers came and went as the murder investigation continued. *See Little*, 473 S.W.3d at 667 ("While there was a constant police presence, at no point did the police draw their weapons or make threats, no police officer told Defendant he could not leave, and it does not appear from the record that there were ever more than four officers present."). Nor was the two-hour time period unduly onerous. *See State v. Harris*, 477 S.W.3d 131, 142 (Mo. App. E.D. 2015) ("Two

---

[7] Defendant argues the officers' made "accusatory statements" to Defendant, which "supports a finding of custody[,]" but Defendant fails to cite to any Missouri case law to support this proposition.

8

hours is not an unduly long period of time and does not, in and of itself, support a finding that the length of questioning was coercive.").[8]

Here, Defendant's interrogation bears the hallmarks of voluntary cooperation rather than custodial coercion. Defendant was asked by Sergeant Nash if he would speak to him about Victim. Defendant agreed. The interrogation was reasonable in duration (2 hours), occurred in a familiar setting (Defendant's yard) in the presence of a familiar person (his wife). At no point was Defendant restrained or told he must cooperate. These facts militate against an atmosphere of coercion. Because a reasonable person in Defendant's position would have felt free to leave or terminate the interrogation, Defendant was not in custody and, therefore, was not required to be advised of his **Miranda** rights. *See **Bruce***, 503 S.W.3d at 358-59. The trial court did not err in failing to suppress Defendant's statements. Point 1 is denied.

### Points 2 and 3: Element of Deliberation

Both points 2 and 3 concern the element of deliberation as a part of the offense of first-degree murder. In point 2, Defendant argues the State's opening statement was insufficient because the State omitted any "facts"[9] that created an inference that Defendant deliberated before he shot Victim, and impaired his ability to prepare an adequate defense. Point 3 argues the State's evidence was insufficient to show Defendant deliberated. Because both the State's opening statement and the evidence

---

[8] **Harris** was superseded on other grounds by a constitutional amendment. **State v. Thigpen**, 548 S.W.3d 302, 319-20 (Mo. App. E.D. 2017).

[9] The remarks in the opening statement do not constitute evidence of the facts asserted. **State v. McFadden**, 369 S.W.3d 727, 742 (Mo. banc 2012).

presented at trial regarding deliberation were sufficient, Defendant's points 2 and 3 fail. For ease of analysis, we address points 2 and 3 in reverse order.

*Sufficient Evidence of Deliberation*

In point 3, Defendant argues the State presented insufficient evidence as to the element of deliberation. In reviewing sufficiency of the evidence, our standard of review is limited to whether the State introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt. ***State v. Hunt***, 451 S.W.3d 251, 257 (Mo. banc 2014). We do not reweigh the evidence but, instead, view it in the light most favorable to the verdict, giving the State all reasonable inferences. ***Id.*** Contrary evidence and inferences are disregarded and we may not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. ***Id.***

Defendant was charged with first-degree murder. First-degree murder requires the State to prove three elements: (1) that defendant knowingly (2) caused the death of another person (3) after deliberation upon the matter. § 565.020.1. Deliberation is "cool reflection for any length of time no matter how brief[.]" § 565.002(3). Because direct proof of a mental state is rarely available, the State may prove a defendant's mental state by indirect evidence and reasonable inferences drawn from the circumstances surrounding the death. ***State v. Johns***, 34 S.W.3d 93, 110 (Mo. banc 2000). "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." ***State v. Nathan***, 404 S.W.3d 253, 266 (Mo. banc 2013).

The State presented the following evidence during trial. Defendant had been angry at Victim for several months for the way he treated Daughter and for threatening

10

to turn Defendant in for selling prescription pills. Defendant and Son told Daughter they were going to "go find [Victim]" and "take care of the situation[.]" Defendant and Son located Victim on his bicycle on his way to work. Defendant, from inside the truck, shot Victim in the shoulder. Victim tried peddling away. Defendant turned the truck around and went after Victim, bumping him with the truck. Son fired three more shots into Victim. Defendant and Son dumped Victim's body off the bridge. All of this evidence, combined with the reasonable inferences drawn therefrom, was sufficient for the jury to find beyond a reasonable doubt that Defendant deliberated before committing the acts. Point 3 is denied.

*Sufficient Anticipated Evidence of Deliberation in Opening Statement*

Defendant's point 2 fails for similar reasons as discussed in point 3. In criminal prosecutions, the State is required to make an opening statement for the purpose of outlining the anticipated evidence for the court, the jury, and the defendant. ***Johns***, 34 S.W.3d at 110; *see **State v. Watson***, 839 S.W.2d 611, 615 (Mo. App. E.D. 1992) ("An opening statement will withstand a motion for judgment of acquittal if it contains facts sufficient to make a submissible case.").

The State's opening statement contained sufficient anticipated evidence to make a submissible case on the element of deliberation:

> You will finally, after, towards the end of this interview [hear] . . . [t]hat [Defendant] and [Son] were in a truck, a truck they were renting to own from a man named Jacob Watts, who you will also hear from, and [they] located [Victim] on his way to work. You will hear [Defendant] himself say that he shot [Victim] from the vehicle and that [Victim] tried to bike away as fast as he could to get away from these two people, from [Defendant] and [Son]. You will hear [Defendant] say that him and [Son] turned that truck around, hit [Victim] on his bicycle with the truck. Finally, you will hear that [Son], shot [Victim] numerous times. I expect

11

you will hear after that, that [Victim] was put into a truck and thrown off of a bridge with his bicycle.[10]

The State's opening statement provided the court, the jury, and Defendant with the evidence it intended to present regarding deliberation and what that evidence would show. The opening statement apprised Defendant of the charges against him and the State's anticipated evidence in the opening statement was sufficient to make a submissible case on the element of deliberation. Point 2 is denied.

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, C.J. – CONCURS

GARY W. LYNCH, J. – CONCURS

---

[10] For the sake of brevity, we have included only part of the State's opening statement.